Good morning. Good morning, Your Honor. I am Patricia Tsubokawa-Reeves, on behalf of the appellant, Christopher Okwuosa, who is present in court today. We also have present in court today some of the declarants in support of the opposition to the motion for summary judgment, John Chase and Odell Berry. Was it my understanding, Judge Silverman, that we're going to do 10 minutes? Right. Okay. I'd like to reserve two minutes of that time for rebuttal. Sure. This is indeed a pleasure that we are appearing before you today because this is, in fact, our first court hearing in this matter. This was a motion for summary judgment that was brought on behalf of the defendants that was granted by the Federal District Court. We are well aware that you probably have reviewed the extensive briefing in this case, so I would just like to bring to your attention during this oral argument just three main points that are very important to the plaintiff in this case. Those three main points are the significance of the slaving comment that led to a memorandum of corrective action right before he was rejected on probation, in fact, a very irregular probation. That is the second point that I would like to discuss with you as being very important to the appellant, and that is the basic unfairness of the probationary period in which he served that was in direct violation of all of the civil service rules that apply to a probation in this instance. And that unfairness, we believe, is an indicia of the racial discrimination that was present in this case. The last point, which is probably the most important, is the circumstance in which these facts arise, and that is the bureaucratic culture that has been created in the Audit and Evaluation Division of this branch of the State of California's Employment Development Department. This is a consolidated appeal based on the government's position that they are entitled to attorney's fees in this case. So I would like to spend a few moments of my time to also address the issue of whether attorney's fees in this case are justified based upon the bad faith argument that is raised in the opening brief for the cross-appeal. I don't think you need to spend too much time on that. Maybe the other judges do. But I'd like you to get to the merits of your claim. The district court judge assumed there was a prima facie – well, no. He actually, in this case, he did not find a prima facie case on either of your – on any of your causes of action. And I think you need to explain to us why the evidence, in fact, does support a prima facie case. Which is a very minimal threshold. And that's exactly the point that I would make. It is a minimal standard, even below the preponderance of evidence. In this case, we brought three causes of action. First was racial discrimination based on both national origin and race. The second was retaliation for reporting racial discrimination. And the third was harassment. The prima facie elements for each of those causes of action are very minimal. And there is no – it is undisputed that Christopher Okwuaza meets the definition of a protected class. The prongs that Judge Burrell found that were not satisfied in this sixth circumstance are, first, that he was not performing at a level that would ordinarily entitle him to the position in which he was on probation for, and, third, that he was not treated differently than a similarly situated coworker. For the first element of that prima facie case, which was that he was not performing at the level that would entitle him to that position for which he was on probation. That then involves the proof that was offered in support of the motion for summary judgment to examine exactly why he was just a poor-performing employee. At this level, it is our understanding that we only need to raise a triable issue of fact. We do not need to prove that he was a performing employee. And for that, raising the issue of a triable issue of fact, we simply point to the fact that an errant period in the middle of a sentence of a draft report and that a misplaced comma in a figure, when you're doing an audit and evaluation, would be the basis for way back in 1992 when his supervisor, Tony Majerski, put that into several memos that appeared to be, first of all, done before he ever had an opportunity to work with Christopher Okuaza, and then is simply rubber-stamped and repeated year after year after year, so that the only evidence we have is conclusory statements that he's a poor-performing employee. However, we offer as proof of that by the defendant's own conduct, that if he was such a poorly-performing employee, why was he never disciplined, demoted, put on probation? He was always just allowed to do his work. And there's never any comments about in that proof offered by the defendants that his work, the substantive level of his work, was substandard. He didn't go to training classes. What he was told is that he was not accepting constructive criticism. And that goes on year after year after year. So at least at the very minimal level, it appears that we should be able to put the proof on, particularly since there are so many declarants in this case of the many years, over 10 years, in fact, of multiple layers of supervisors who claim that he's a poorly-performing employee, but we never really get into the substantive level of how they came to that conclusion, other than almost exactly verbatim statements in which they are just repeating what the prior supervisor said. He was promoted, right? He took an exam, and he was promoted to the next level. Yes. And that is, I think, leads us to our second point, which is very important to us. Even if we put away all that 10 years, and we do not even consider that because he was promoted, and he was promoted by that same group of supervisors that were rubber-stamping what a poorly-performing employee was. If we start from the very basic of his probationary period, which is August 1st, 2000, he was promoted. That then takes us to the second level of whether he was treated as similarly-situated coworkers, which is the third prong of that prima facie case. The probationary period in this case is very extraordinary. Under civil service rules for the State of California, a probationer should get three probation reports. The purpose of those reports are to give the probationer notice as to whether he's performing to successfully complete his probation. They should be done at two-month intervals. There is someone else that was also promoted, and that's Russell Wong. And Judge Burrell used Russell Wong's similar rejection on probation to find that the prima facie elements for a similarly-situated coworker was not met in this case. We argue very strenuously that not only was the probation unfair, because Christopher Okwuaz is never given an opportunity to get those probation reports to improve his performance, suggesting there's a protectural motive behind those probation reports, but also because Russell Wong is also a protected category, because two acts of discrimination happen, and they are similar, should not be proof that no discrimination happened at all. In fact, that leads us to our third point, in that probably the most important here is that Russell Wong worked in the same department as Christopher Okwuaz. Both of them are protected status, and they, both of them worked there for a long time under the same regime of management. The bureaucratic culture that was created by the same supervisor simply rotating through, recycling, doing the same job with the same people with different titles under different governmental regimes, come to the same conclusion, creates such a protective shield that racial discrimination can never be looked at with an unjaundiced and objective eye, because all of these people have experience with each other at all different levels. You mentioned you went to the States in time for rebuttal. I did. Thank you very much. Thank you, Your Honor. Good morning. May it please the Court, my name is Dave Bass. I'm from the California Attorney General's Office. I represent and have represented all nine individual defendants and the Employment Development Department throughout this litigation. This lawsuit was brought, and it was groundless when it was brought. It was doggedly pursued by Mr. Okwuaz and his counsel after a long, deciduous discovery process continued to reveal there was not any evidence to support any one of the 39 causes of action that were alleged, not the three causes of action, but 39. When counsel pursues a dogged claim, I'm sorry, when counsel doggedly pursues even a colorable claim after the evidence shows, after the discovery shows there's no evidence and the claim is bound to fail. No. I was troubled by the situation when Okwuaz was promoted and there was this unusual review system set up for him where Dr. and the Director Chief Fisher wanted to review his draft probationary report, and that didn't happen to anybody else. And before it was issued and then there was a delay in issuing his probationary reports. There's evidence in the record as to that. There's no evidence in the record, Your Honor, that it didn't have. There is evidence in the record. Now, you might dispute it, but there is evidence in the record based on a declaration that Ed Murray told Barry, I think it's Barry's declaration, that the Director Chief Fisher wanted to review the draft reports of the first probationary period. Correct. I wasn't perhaps careful enough with when I said there was no evidence in the record. What I meant to say, Your Honor, was that there's no evidence in the record that that didn't happen with other people on probation. In fact, what Mr. Fisher has testified to is that he did it, that same thing, with Mr. Okwos's brother that went, when he was first promoted. Remember, Mr. Fisher promoted another African American born in Nigeria, the plaintiff's brother, and went to him after the promotional decision was made and explained that he had a chance to show his opportunities, that he had an opportunity now to show that he was, in fact, able and had the abilities to perform the new functions that he was on a probationary period for. The brother, Emanuel Okwosa, was able to perform those. So there is clearly, there's lots of self-serving testimony from Mr. Okwosa. What was Mr. Berry? I mean, his declaration says he never had, you know, this disagreement. He was the direct supervisor, and he said that Mr. Okwosa's performance was satisfactory and that upper level supervisors put pressure on him to change that. Mr. Berry's declaration, when it's carefully examined, has only personal knowledge about the first probationary period. Mr. Berry's unfortunate situation that was his mother was dying. I believe it was his mother. I apologize if it was his father. But one of his parents was dying. He had to take a lot of time off and wasn't available. So he only had precipient knowledge about the first of the three probationary periods. And it's undisputed that the way the civil service system works in California is that the first of the three probation periods essentially doesn't test the full capabilities needed to be demonstrated for the promotion. And, in fact, if you, if Mr. Berry, in his first probation report, which is the one he prepared, where every category but one is ruled as satisfactory, says, in fact, you haven't been tested on the full range of skills as an AMA. You've only been given limited assignments. And the next two we're going to be having to give you. I'm going to the point that you're saying this case was, you know, meritless and frivolous. There's another declaration that said during the first probationary period that Okwosa was responsible and attentive to details, wrote clearly, met project deadlines, and that Supervisor Fong, who apparently had been with, no, that's a different one, that he became confrontational when she told him that Okwosa was meeting the standards of the audit, that somehow there was some pressure directed toward him. Now, we don't, that doesn't go to motivation, but directed toward him to give him a negative review in this period. I'm sorry. I'm not, which declaration are you referring to? One second. You were getting a little pop on the microphone. Could you stand back just a second? Sure. Here you go. I'm just pointing to evidence that I, you know, that meets various elements of their prima facie. So there's, as the district court found, there was, he was unable to establish a prima facie case for any one of the 39 causes of action, and for 29 of them. No, yes, he found, the district court went through each element of each cause of action. Right. And he found that there was no evidence on certain of the elements that defeated. Well, for 29 of the causes of action, Your Honor, the district court found that only one cause, one prong of the prima facie case on those 29 causes of action was met, and that's the prong that's impossible not to meet, because everyone's a member of a protected class. I'm a member of a protected class. Everyone is. And on 29 of those causes of action, including that 11-year period of the discrimination and harassment claims leading up to the promotion, the court specifically found that was the only prong that there was admissible, that there was any evidence of. So it's not simply the case that he only, he almost made his prima facie case. In fact, one of the reasons the district court abused his discretion in denying fees was that it's ignored its own order in that respect. The district court focused on only one small component of the 10 discrimination claims, and that's the promotion component. Because Mr. Okose had pled a 13-year period through the period of litigation of discrimination, the court, for analytical clarity, broke those up in its summary judgment order. So it goes through the prima facie prongs in each discrimination claim on the 10 years before the promotion, excuse me, the 11 years before the motion, and then the promotion period. And the only prima facie case that the court talks about, its attorney's fees order, is the one other discrimination claim, so it ignores the other 29 completely, and in those it only talks about the promotion. And it points to the fact that, well, he made three of the four, and so that shows the claim isn't without merit. Now, there's simply no law that supports the statement that if you almost make a prima facie case out, that means it's not, that shows that it's not frivolous. In fact, this Court in Warren set down a rule in a Rule 11 case that involved an employment dispute. That said it was incorrect for the district court, and the court abused its discretion, when it found frivolousness and groundlessness because the plaintiff had made a prima facie case out. So in Warren, this Court has found that by making a prima facie case out, it would be incorrect and abuse of discretion to find groundlessness under the Christiansburg standard. What's your best case for awarding fees? I mean, it seems to me this is generally well within the discretion of the trial judges. Our best case, Your Honor, is based on... I mean, what's the citation to a case is what I meant. Well, the Carrion case, which says that as odious as discrimination is, it's just as odious to make a false claim of discrimination. And here, and it shows the court, the district court abused its discretion, too. You have a statement that's made in each of the four Federal complaints. About the master's degree? No. I'm not there yet. That's not my best. My best case for this is the no black man statement. The no black man statement. In each of the four complaints, it's pled. It was known that Defendant Ed Murray said, no black man will be promoted while I'm in charge. Now, if that's a supportable state, if that's a supportable allegation, you make a prima facie case and you may win a lot of money at trial. Now, when we asked through the discovery process, state all facts, plaintiff, under Rule 11 that support that allegation, plaintiff's counsel under Rule 11 signed a discovery response that said, several witnesses have heard this statement. It is widely known by everyone in the division. Now, those are verified by the plaintiff under penalty of perjury and signed by the plaintiff's counsel under Rule 11. At his deposition, the plaintiff said not only did he never hear that statement, but he couldn't identify a single person who told him that they even heard the rumor of that statement. Not one. After his deposition, which we had to do a motion to compel to even complete, we sent another discovery request. And again, plaintiff's counsel said lots of witnesses have heard this. It was everyone knew it, but they couldn't name an individual. Now, if one thinks about an African-American employee who for 13 years believes he was discriminated, undisputed fact number two in the summary judgment is the deposition testimony. Wrap it up. You're over your time, so please complete your thought quickly. Okay. It's implausible that a black employee who believes he was discriminated against for 13 years has heard a statement from a defendant of such a sensational and terrible character and has brought declarants here to the court, sent them to the summary judgment, can't identify one person who either heard that or didn't. Thank you very much. I'd like to be able to reserve. You're out of time, so thank you very much. I've got about a minute and a half left. I understand. Okay. So in rebuttal, the question was not or I think it's a semantic one here. It's not. The question was have you ever heard Ed Murray say no black man would ever be promoted while I'm in charge. And the answer was they didn't hear the words, but in fact that's what happened. So when we argued in the allegation that that's what we were going for is because that's what happened. And Emanuel Cuozzo gives his declaration saying that he was a similarly situated black man, had to go outside of the department in order to be promoted. And that is a very crucial distinction for Emanuel. And then in closing, I think it's very important to note that Chris Ocuozzo was held to an impossible standard. He was criticized for using the telephone, and yet that was part of his job. That was a tool of his work. And so if today he loses this appeal, then the people that are watching this case, and there are many, will not know how are you supposed to act at work. Can you use the phone or can you not use the phone? Are you subject to your supervisor just criticizing you by counting up your phone calls to call that the excessive use of the phone for personal use without even knowing what those phone calls were? The purpose of Mr. Ocuozzo's appeal today is simply to ask for a level playing field, to have those rules applied to him as evenly as they should be applied to everyone else, so that he knows how to do his job, so that he feels as if his work will be acknowledged and not just the color of his skin. Thank you very much. Thank you, Mr. Bass, as well. The case does argue to submit. We'll stand at recess for today.
judges: Thomas, Silverman, Clifton